# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action Number 1:19-cv-00051

Jeremy Banks,
David Bartholomew,
Daniel Brantley,
Frances Brantley,
Ashley Cascio,
 Joel Cascio,
Michael Garfield Collier,
Julie Joanne Kiley,
Marie Crichlow,
Robert Crichlow,
MichaelCruz,
Grace Cruz,
Julia Fairbanks,
Verna Gibson,
Tyrone Gibson,
Denico Ali Green,
Denain Nicole Green,
Sonia Gryske,
Rick Hammel,
Joni Brands,
Melinda Heichel,
Kelly Lomsdalen,
Horace Huntley,
Barbara Huntley,
Vicki Jenkins,
Crystal Jenkins,
Pilsun Johnson,
Rhodalynn Vitales Johnson,
Diane E Levine,
Terri Soltis,
Richard Soltis,
Randall Talkington,
Colleen Talkington,
Pamela Taylor,
Keith Sutton,
Willie Wade,

Plaintiffs,

v.

HILTON GRAND VACATIONS COMPANY, LLC,
    Defendant.

_____

## COMPLAINT

_____


## INTRODUCTION

1. Plaintiffs bring this action as victims of Defendant's nationwide fraudulent schemes, which works as follows.  Defendant solicits buyers through cold phone calls that promise they have won a free vacation or prize.   The consumer books the "free vacation" over the phone and later discovers via the confirmation email that a condition is that they must attend a presentation by Hilton representatives.

2. Once the consumer arrives at the resort, a company representative greets them, gets information about their hobbies and interests.  Then, a brief tour of the facility occurs. They then return to the office and the company representative shows the consumer pictures of other Hilton resorts, with emphasis given to any location that is in line with the consumer's interests or hobbies, i.e. Disneyland, Europe, the Caribbean, etc.

3. Next, Hilton representatives address the issue of cost by making comparisons with the cost of other vacations such as a vacation house, or ten years of two week vacations during which the family stays at hotels and eats all meals at restaurants.   These costs are often vastly overstated or manipulated by Hilton.  These options are then contrasted

with the benefits and costs of a timeshare membership.  During this process, Hilton

representatives are trained to actively lie and mislead consumers by making a host of

false claims.  For example, consumers are falsely told that if they buy a Hilton

timeshare, they can go on vacation anywhere in the world, anytime, and that all they

need to do is log onto the website or call Hilton.

4.  Then, Hilton representatives are trained to falsely tell the consumer that they can sell

their timeshare membership at any time if they are not happy, that Hilton will even buy

it back from them, that they can leave their timeshare to their children in the will, that a

timeshare will be a great investment that will go up in value, and that they can even

rent out their timeshare and make a profit.

5.  Hilton falsely tells each consumer that this offer is only available this one day only

because there are several improvements in the works, which will raise the price of the

membership, or alternatively, that there are a limited number of timeshare interests

available, and that several other people are about to purchase them.

6.  This grueling presentation lasts several hours, and is designed to mentally break down

the consumer.  In some cases, participants are denied food, water, and are not allowed

to leave.   If the consumer agrees to purchase a timeshare, the Hilton representative

brings out a stack of paperwork, which says the exact opposite of what the sales person

verbally tells them.  For example, the paperwork will say that they can never cancel the

timeshare, that nobody promised them anything, that they were not pressured, that

nobody said this was an investment, etc.  This paperwork is often presented to the

consumer on a rush basis, with the sales person actively misleading the consumer about

what the documents says, i.e. "this means this and that" which is false, and the Hilton representative leaves out important terms.    Hilton does everything they can to ensure that the person cannot or will not read the contract before signing.

7. After the person signs, there is usually a lot of fanfare, such as ringing bells, Champaign popping, or alarms going off.  This is designed to get the other consumers in the room to believe that there is a limited number of timeshares available for sale.  The new members are congratulated on their wise purchase.

8. The consumer eventually discovers that everything they were lead to believe by Hilton was false.   Rooms are difficult to book, and must be booked 1 year in advance.  Often, the only thing available is Las Vegas or Orlando.  In many cases, people have paid several thousand dollars per year which results in only a 2 or 3 night stay at a low quality hotel.  The annual maintenance fees and timeshare price vastly exceed the price of a regular hotel room.  In reality, Hilton does not buy back the timeshare as promised. In fact, most people cannot even sell their timeshares, as auction sites such as Ebay and Craigslist are full of people trying to sell their time shares for $1, with no buyers. Instead of a timeshare being an asset, it is actually a debt in perpetuity, with little to no benefits, and which can never be discharged in bankruptcy.

## PARTIES & JURISDICTION

9. Plaintiffs Jeremy Banks, David Bartholomew, Daniel  and Frances Brantley, Ashley Cascio and Joel Cascio, Michael Garfield Collier and Julie Joanne Kiley,Marie Crichlow and Robert Crichlow, MichaelCruz and Grace Cruz, Julia Fairbanks, Verna Gibson and

Tyrone Gibson, Denico Ali Green and Denain Nicole Green, Sonia Gryske, Rick Hammel and Joni Brands, Melinda Heichel and Kelly Lomsdalen, Horace Huntley and Barbara Huntley, Vicki Jenkins and Crystal Jenkins, Pilsun Johnson and Rhodalynn Vitales Johnson, Diane E Levine, Terri Soltis and Richard Soltis, Randall Talkington and Colleen Talkington, Pamela Taylor and Keith Sutton, and Willie Wade are individual consumers who purchased timeshare interests from the Defendant. Plaintiffs are joining together as co- Plaintiffs where consolidation is judicially efficient because of the same Defendant and same claims (sharing all [or all but one] causes of action) with very similar and like factual patterns due to Defendant's conduct that occurs in multiple sales facilities, yet all have substantially similar substantive claims, where certain patterns of 'fraud schemes' are common and are all pled with particularity, evidencing abusive sales practices and predatory lending practices.

10. Defendant HILTON GRAND VACATIONS COMPANY, LLC is a Delaware LLC located at 6355 Metrowest Blvd, Suite 180, Orlando, FL 32835.  Venue is proper in the District of Colorado because Defendant is a resident of Colorado, Defendant is registered to conduct business in Colorado, and has consented to be served in the State of Colorado at 1900 W. Littleton Boulevard, Littleton, CO 80120.  Defendant also owns and maintains multiple real properties and timeshares in the state of Colorado.

11. This Court has jurisdiction to hear the case pursuant to 28 U.S.C. § 1332 because the parties are all citizens of different states and the amount in controversy exceeds $75,000.

**GENERAL ALLEGATIONS TO ALL PLAINTIFFS**

12. Timeshare sales presentations were made by Defendant Hilton's Sales Representatives ("reps") with the following untrue, deceptive and misleading representations:

13. That the timeshare had substantial market <u>value</u> and would be always be a "good investment" as a long-term "asset" that could be resold for a "profit" due to appreciation.  However, the Plaintiffs herein later discover that there is no market value as promised, thus resales are not possible, and some have testified to seeing thousands of timeshares on eBay (and or Craigslist) for only $1.00, and they are still not selling, for even $1.00.

14. That Consumers (Plaintiffs) were told by the sales reps that they <u>must buy that day</u> and if they did not purchase at that time, the price would be many thousands of dollars more (a deprived benefit of a monetary penalty for not buying that day).

15. That the Timeshare's <u>resale</u> was "easy to sell" because it was so "valuable and desirable" and that Defendant would help them resell or take the timeshare back if the Plaintiffs no longer wanted it, which the Consumers learn years later is untrue, when they call to try to invoke their promised rights.

16. That the timeshare <u>maintenance fees</u> either (1) do not go up at all (fixed), or (2) would go up very little. However, regular escalation of yearly maintenance fees is commonplace.

17. That Plaintiffs were not told about <u>successor liability</u> when they die, and all Plaintiffs were told, was that this timeshare was a valuable "asset" or a "legacy", and that at the Owners' option "could" be put in their Will and that the Owners

(Plaintiffs) "can" decide who gets it in that way.  As a result, none of the Plaintiffs knew the truth that, despite any *possible future act* (making a Will or a Codicil if a Will exists), the Hilton Timeshare Contract being fully executed that day, would already eternally bind all of their children (as "successors") to be jointly & severally liable for the ever-increasing debt, continuing to their children's children… for generations to come.

18. That because Plaintiffs would own prime resort "property", they could make substantial <u>rental income</u> that would be more than what was paid every year in maintenance fees. Some Plaintiffs were told it would pay the maintenance fees and the mortgage, and still have a residual balance left over for profit.

19. That the sales representatives stated that once you become a "Hilton owner" then <u>anytime, anywhere bookings</u> would be easy, which is ardently refuted by the Plaintiffs herein, where bookings are restricted to 11 months in advance and none of the destination locations, nor the 5-star resorts (often specific resorts and destinations were promised at the point-of-sale), were available in actual and repeated attempts to get what the Plaintiffs paid tens of thousands of dollars for, and unwittingly obligated themselves and their family for hundreds of thousands of dollars into the future.

20. At best, Hilton "owners" received only heavily advanced bookings (11 months) for what was often meager, <u>substandard accommodations in unwanted locations</u> that they were *told* were the only rooms available, yet the "public" can readily book (consumers view on Expedia.com and elsewhere on the Internet) immediate

reservations anytime, including the next day, and that is the same accommodations and amenities that the Plaintiffs herein had originally desired, and were promised at the point-of-sale if they only became Hilton owners, but in practice had extreme difficulty booking once they became owners.

21. That some Plaintiffs were told they would receive <u>better amenities</u> by becoming Hilton owners.

22. That for some of the Plaintiffs, they were involved secondary fraud & deceit to sell <u>"Upgrades" (thousands of dollars) for the sole purpose of resolving prior deficiencies</u> which in fact were created [to cause the need for a future Upgrade] by the same Defendant at a prior sale; however, the new Upgrade(s) never seems to resolve the prior problem or deficiencies that they are purported to fix.

23. That these Upgrades purchased by Plaintiffs often more than double their fees, and the <u>increased fees</u>, are often coupled with many thousands of dollars paid in a down payment and <u>increased mortgage balances</u>, sometimes in the tens of thousands.

24. All of the above allegations show lack of truthfulness, if not blatant fraud & deceit perpetrated by the Defendant, its' sales persons, and its' management, all with the intention of inducing consumers to make a purchase that day. Plaintiffs believed these misrepresentations and they relied upon them to their unfortunate detriment as victims of Fraud.

25. All Plaintiffs have a strong correlation of similar fraud schemes, along with the following 4 commonalities occurring to most if not all Plaintiffs in each category:

**Plaintiffs did not receive proper Public Offering notice.**

**Plaintiffs did not receive proper Statutory Rescission notice.**

**Plaintiffs did not receive any notice at all of Successor Liability.**

**Plaintiffs, because of high-interest & fees pay up to $15,000 to $25,000/wk.[1]**

26. These grounds for Rescission based upon statutory relief or common law fraud, are

    all derived from the Plaintiffs' individual facts in the following Facts section of this

    Complaint, including the pleadings with particularity that have been integrated into

    this Complaint.

### SPECIFIC ALLEGATIONS AS TO EACH PLAINTIFF

27. Plaintiffs all share similar encounters with Defendant Hilton. Plaintiffs were on

    vacation at or near a Hilton Resort. Each was enticed in some manner to attend a

    sales presentation represented to be "90 minutes" or less.

28. What ensued was a 3-hour to 8-hour ordeal [with most Plaintiffs herein at 6 to 4

    hours] of deceptive sales-oriented activity, during which representatives of Hilton

    engaged in tactics designed by Defendant Hilton to manipulate and/or coerce

    consumers, such as Plaintiffs, to purchase a week's lodging through a timeshare.

---

[1] Actual and estimated per week rates presented in the order of Plaintiff Fact supp. are as follows: $60,000 cost over 10 years for no use; $6,000/week; $12,000/week; $4,666/week; $35,000 cost over 10 years for no use; $8694/week; $10,000/week; not used, projected at $15,000/week*; $7000/week; not used, projected at $12,000/week; $7,000/week; $15,000/week*, $7,000/week; not used, projected at $14,000/week*; $12,500/week; $25,000/week; $160,000 cost over 10 years used 2 times ($80,000 per use); and, $50,000 cost over 10 years for no use, described by owner as, "financial slaves" to Hilton.  * Represents approximately **1000**% over market rates for average accommodations that "owners" find very difficult to book even 11 months in advance, as required (not even 1 Plaintiff was told that either).

Generally, Plaintiffs were not allowed to leave to eat, or have time alone to discuss the presentation, and they were not allowed to read the Contract or to think about the purchase over-night.

29. False promises and concealments (see 6(a)-6(i) below) were made by Defendant Hilton through its sales persons, its management, and its methods & systems, all with the intention of inducing Plaintiffs to make a purchase that day, which never would have been done absent fraud or had the true contract terms been disclosed in an open light.

30. With disclosure of material facts, not one of the Plaintiffs herein would have contracted with Defendant Hilton as is evident in each of the Plaintiff's facts that are pled in the particular. *See Ex. 1, Plaintiff Facts Supplemental.*

31. Instead, the Plaintiffs were deceived and believed those statements by Hilton's staff, and they relied upon Hilton's staff to their unfortunate detriment as victims of Fraud & Deceit.

32. To induce a sale that disclosure in an open light would not have produced, the Plaintiffs were given false and misleading information as listed in categories of fraud schemes in 'a' through 'i' below, and the later Discovery of the fraudulent inducements and/or concealments by the Plaintiffs is denoted by the corresponding active headers (in bold below) showing the truth of the matters falsely asserted:

**a.** Hilton's timeshares are good "investments" that always go up in value (appreciation).

**b.** Hilton's timeshares are valuable as a long-term asset that can be resold for a "profit".

 **Value (a-b)**:   No market value; no resales; thousands have not sold on eBay for $1.00.

**c.** Timeshare "maintenance fees" either do not exist, or don't go up at all or only very little.

**Fees (c):**  Regular escalations of yearly maintenance fees are commonplace.
**d.** Hilton's Timeshares are a valuable asset and legacy the Owner "could" put in a Will.

**e.** Owners (Plaintiffs) "can" decide (optional) who will receive the timeshare in their Will.

**f.** Plaintiffs were not told about "successors" clause in the Contract invoked after they die.

**Wills (d-f)**:  Plaintiffs did not know that despite any possible future contract to make a Will (or Codicil), the Hilton Contract being fully executed that day, would bind all their children  as "successors" to be jointly & severally liable for ever-increasing generational debt.

**g.** Anytime, anywhere "easy booking" at 5-Star resorts and hotels worldwide.

**Use (g)**:  Bookings are restricted to 11 months in advance (Expedia is the same day), but promised destination locations and 5-star resorts are not available, as evidenced by actual and repeated attempts to get what Plaintiffs paid for.

**h.** Plaintiffs can make "rental" income to pay the mortgage, fees and sometimes a profit.

**Rental (h):**  Plaintiffs can't book rooms for themselves, rental is impossible as promised.

**i.** Promises related to "Upgrades" (costing $1000s to $10,000s) to resolve a prior

sale's deficiencies created by Defendant (often repetitive, where the problem is never

fixed).

**Upgrades (i):**  Upgrades always increase (often double) yearly fees and add

thousands to mortgage balances, but never seem to solve the problem, thus requiring

future upgrades.

*33.* These grounds that support Rescission based upon statutory relief or common law

fraud, are all derived from the Plaintiffs' individual facts in the following Facts

section of this Complaint, including the pleadings with particularity that have been

integrated into this Complaint. *See Ex. 1, Plaintiff Facts Supplemental.*

34. Defendant Hilton did not provide proper legal notices under applicable law and

charged unconscionable fees for use.

35. Attached hereto are the Pleadings with Particularity in Plaintiffs' Facts

Supplemental and are an integrated part of this Complaint and this Section "D"

pertaining to the Plaintiffs' allegations of the Facts of this Case.

## COUNT I, VIOLATIONS OF THE CALIFORNIA TIMESHARE ACT
## (RESCISSION AND PUNITIVE DAMAGES)

36. Plaintiffs incorporate by reference all the preceding paragraphs, as though fully set

forth herein.

37. Choice of Law principles permit state courts to apply the substantive laws of states

other than a state of general jurisdiction, as well as apply federal law, in order to

provide remedies to Consumers in consumer fraud situations.  The California Vacation Ownership and Time Share Act of 2004 apply in the case at bar because Defendant owns numerous (3 in Carlsbad, California) timeshare properties in California offered as an "accommodation", and sells access to hundreds more in California as part of a "component" or an "exchange" resort under the marketing system of the Corporate Defendant. Additionally, such rights exist in the written Contracts between Defendant Hilton and Plaintiffs.

38. Further, Defendant has a central booking "reservation system" that Plaintiffs must use as part of Hilton's "multisite time-share plan" where Plaintiffs are required to go through Hilton's intermediary, "RCI" (Resort Condominium International, whose Parent Company is "Wyndham" that is itself a multibillion-dollar timeshare resort company.  RCI handles the central reservations for Hilton's multisite plan that Plaintiffs are required to use to attempt to make bookings for accommodations for resorts in the multisite time-share plan and exchange program.

39. The Facts herein of each Plaintiff are replete with actual experiences demonstrating that the primary purpose and function of RCI is to frustrate, obstruct and deny bookings on behalf of its collusive partner, and fellow timeshare crony, Hilton.

40. Under the California Business and Professions Code Section 11211.5(a), The California Vacation Ownership and Time Share Act of 2004 applies to:

> Time-share Plans with an accommodation or component site in this state [CA].

41. The California Business and Professions Code, Section 11285, provides:

42. An action for damages… may be brought by any timeshare interest owner…. Relief
under this section does not exclude other remedies provided by law.

43. California Business and Professions Code, Section 11285, provides owner relief
where the Defendant has at least one timeshare property, accommodations, and/or
component sites located in the State of California.

44. Statutory remedies are available to Plaintiffs under the California Vacation and
Ownership Time-Share Act of 2004 which permits remedies for all of the Plaintiffs
herein for Contract Rescission.

45. California Vacation and Ownership Time-Share Act of 2004 permits remedies for
Damages, including Punitive Damages as applicable in conjunction with the
California Consumer Protection Act.

46. Defendant also engaged in the unauthorized practice of law (UPL) in connection
with the sale of the timeshares to the Plaintiffs.

47. These UPL acts came in two forms:

    a.    **Contracts Law:** a *de facto* lawyer explains the legal terms of the Contract
          and states what it really means, as opposed to reading the terms aloud or
          providing copies to permit the consumers to read the Contract.

    b.    **Wills & Estates Law:** Consumers are told about how they can plan their
Estate with this new "asset" to leave a "legacy" to their child or children (or anyone
they choose) using a "Will", while fraudulently concealing a known "successors"
clause in the Contract that forces obligations upon future generations who are all
jointly and severally liable for the ever-rising maintenance fee debt.

48. The signing is orchestrated by a *Closer* which is referred to as a "Loan Officer" but they do not go over the loan in any detail and only give any information about the loan when forced by questions and then only minimally or false information is given.

49. After a 3-hour to 8-hour ordeal [with most Plaintiffs herein at 6 to 4 hours] that was used to mentally and physically wear down the consumers in the sales room, there is a rapid signing of many documents that lasts only about ten (10) to fifteen (15) minutes.

50. The entire contract signing process is controlled from start to finish by the *Closer*, and consumers are not permitted to read the contract, nor permitted to leave the room, nor to discuss the contract alone, and they are not permitted to review the contract with an Attorney.

51. Consumers are also not permitted to take the contract and come back the next day, and they are forced to sign the contract that day or they will be deprived of many thousands of dollars.

52. The Closer artfully says "this means this" and "sign here" and "initial here" to get these hungry, physically tired and mentally drained Consumers back to their vacation.

53. Because the non-lawyer's interpretations were untruthful, these interpretations of contract terms were used to deceive the Consumer-Plaintiffs herein.

54. In the end, the Consumers believe they are signing and initialing a document that conforms with everything that they were told by Hilton's salespeople and the

management of the resort during the many hours spent in sales-related activity; however, the rapid verbal interpretation of the Contract terms by non-lawyers at Hilton, did not, at all, conform with the actual, written terms of the Contract which they were signing.

55. As a result of Hilton staff's unlawful practice of law, overlaid with fraud & deceit, there never was a meeting of the minds, and there was no meaningful disclosure of the contract terms, thereby forming appropriate grounds for contract Rescission.

56. The violations of UPL prohibitions serve to evidence the legal grounds as well as the deserved need for providing relief for fraud and/or statutory relief claims herein.

57. The other form of UPL conduct, Wills & Estates Law, which is also performed upon the Plaintiffs herein, is for Hilton staff to interpret the law as it applies to Wills & Estates, and thereby deceive Plaintiffs herein, when Hilton knows that a standard Hilton contract feature is the "successors" liability contract term that defeats all of the staff's discussions with Plaintiffs about an asset to be used for optional Will bequests.

58. Consumers are advised that they "can" put the timeshare in their Will, when it is known that familial obligations [forcible] are already contained in the Contract.

59. Owners are told they "could" or "can" do whatever they want with the timeshare with regard to their estate such as leave it to one or more of their children.

60. However, due to the "successors" clause in the contract the Plaintiffs are fraudulently committed to a contract for the purchase of a timeshare which inherently forms joint & several liability to all those same family members who are

in the lines of succession, that can be forced to assume the timeshare obligations upon the final owner's demise.

61. This successor liability was an express term of the parties' Contracts for each of the Plaintiffs herein, yet none (not 1) of the Plaintiffs had any disclosure of this perpetual and generational debt obligation.

62. The actual word "successors" was buried in a boilerplate sentence with heirs and assigns and other potential future parties, however, consumers are unwittingly and by surreptitious design of Defendant Hilton, signing an instrument that transfers escalating debt to the owners' successor children (if no children, then siblings) and to future generations.

63. None of the Plaintiffs herein had any idea they were obligating their children and all of their future generations of their family to ever-rising debt, and in all cases this information would have prevented the signing of the contract.

## COUNT II, FRAUDULENT MISREPRESENTATION
## BAIT & SWITCH / INDUCEMENT / CONCEALMENT
## (RECISSION)

64. Plaintiffs incorporate by reference all the preceding paragraphs, as though fully set forth herein.

65. Hilton's representatives engaged in high-pressure sales presentations designed to induce Plaintiffs to make a significant financial decision in a short time span with inaccurate information.

66. Hilton's representatives intentionally misrepresented certain material facts as referenced in the Plaintiff's Facts section herein (including its Plaintiff Facts supp.).

67. Hilton's representatives knew (as this was their training) that their representations through tactics and fraud schemes detailed herein, were false and misleading.

68. Examples of these fraud schemes are set forth in the section "D" Facts its component of Plaintiffs' Facts supplemental which is pled with particularity therein.

69. Hilton's staff made misrepresentations that were intentionally made for the purpose of inducing Plaintiffs to enter into contracts to close the sale and to pay many thousands in purchase funds and enormous future obligations, including high-interest mortgages along with ever-rising [generational] maintenance fees.

70. At all relevant times, Hilton's representatives were acting as agents of Hilton, and the acts of the representatives are attributable to Hilton, because they were performed in the course of work, and trained, directed and managed daily by Hilton management which is involved from inception of their agents through their education in the fraud schemes and refinement and strategies, including daily execution of tactics and strategies designed to defraud consumers, all of which was directed by Hilton's Management.

71. For all the reasons set forth herein, the Plaintiffs became induced to purchase a timeshare interest from Hilton by means of fraud & deceit.  The false representations of material facts, combined with the high-pressure sales pitches, deceptive procedures, defective or absence of disclosures, were all designed to separate the Plaintiffs from their money in exchange for substantially less than was promised.

72. The sales contracts between the parties should be Rescinded with the timeshare interest returned to Hilton, and the contracts thereupon Reformed to permit the Court or a Jury to award damages and other relief to which the Plaintiffs are entitled, including Punitive Damages, which are warranted for the intentional, deceptive, unfair, and fraudulent conduct of Hilton.

73. In addition to the remedies of rescission and restitution, Plaintiffs seek actual damages for non-economic injuries such as emotional distress, inconvenience, worry and stress.

Plaintiffs request that relief be granted and ordered as follows:

1.  For rescission of their Contracts;
2.  For general damages in an amount according to proof;
3.  For punitive damages to punish the Defendant and deter such future conduct;
4.  For attorney's fees, court costs, prejudgment interest; and,
5.  For such other and further relief as this Court may deem just and proper.

Respectfully submitted this 8th day of January 2019.

s/ Matthew R. Osborne
11178 Huron St., Ste 7
Northglenn, CO 80234
(303) 759-7018
matt@mrosbornelawpc.com

The Abrams Firm
John P. Abrams, WA Bar No.: 31068
1401 Marvin Road, Ste 307
Olympia-Lacey, WA 98516
Telephone No.: 360-918-8196; Facsimile No.: 855-820-2142

*Attorneys for Plaintiff*

**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY**